USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/24/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LANSFORD DYER AND                  :
HEART TO ART MUSIC,                          05 Civ. 6583 (WHP)
                                   :
                  Plaintiffs,                MEMORANDUM AND ORDER
                                   :
            -against-
                                   :
V.P. RECORDS
RETAIL OUTLET, INC. AND            :
V.P. MUSIC GROUP, INC.,
                                   :
                  Defendants.
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

>            Plaintiffs Lansford Dyer ("Dyer") and Heart to Art Music ("HTA") bring
> copyright and antitrust claims, as well as state law claims of tortious interference with contract,
> unfair competition, conversion and unjust enrichment against Defendants V.P. Records Retail
> Outlet, Inc. ("VP Records") and V.P. Music Group, Inc. ("VP Music")  The claims arise from
> Defendants' alleged production, sale and use of works featuring a Jamaican reggae artist, Junior
> Kelly ("Kelly").  Defendants move for summary judgment on all of Plaintiffs' claims.  For the
> foregoing reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

I. The Parties

>            Dyer formed HTA with a partner in 2000 to write music and make sound
> recordings.  (Declaration of Al J. Daniel dated Oct. 3, 2007 ("Daniel Decl.") Ex G: Deposition of

1

Lansford Dyer dated July 26, 2006 at 26-27.)  VP Records owns and operates two record stores in Queens and Brooklyn, New York.  (Unsworn Declaration of Christopher Chin dated Oct. 2, 2007 ("Chin Decl.") ¶ 3.)  VP Music, a record company that manages Caribbean musicians, was founded by the owners of VP Records and is currently run by their children. (Chin Decl. ¶¶ 5-10.)  VP Music's albums are among the top-selling reggae albums in the United States.  (Daniel Decl. Ex R: "Top Reggae Albums" on Billboard.com for Week of Oct. 6, 2007.)

II.  The Exclusive Recording Agreement

On July 15, 2000, VP Music and Kelly entered into an agreement (the "VP Agreement"), providing that VP Music would receive "the exclusive services of [Kelly] to deliver to [VP Music] Master Recordings as provided for herein, and to furnish the services of individual producers to produce such Master Recordings."  (Daniel Decl. Ex A: Exclusive Recording Agreement dated July 15, 2000 ¶ 2.1.)  Under the VP Agreement, VP Music owned the recordings Kelly delivered, controlled the rights to perform or distribute them, and had the right to use Kelly's performance in any videos for commercial and promotional purposes. (Daniel Decl. Ex. A ¶ 5.1.)  Further, the VP Agreement authorized VP Records "to use . . . any likenesses, whether or not current (including pictures . . . from any Audio-Visual Recordings made hereunder) . . . for purposes of advertising, promotion and trade and in connection with the making and exploitation of records hereunder."  (Daniel Decl. Ex. A ¶ 5.4.)

III.  "Sinking Feeling" Recording and Video

In October 2001, Dyer asked Kelly to write and record two songs for an album Dyer and a Jamaican producer were creating.  (Declaration of Ernest Braithwaite dated Oct. 31, 2007 ("Braithwaite Decl.") ¶¶ 12-13.)  Kelly orally agreed to create two songs using rhythms the Jamaican producer provided him for 70,000 Jamaican dollars (the "HTA Contract").  (Braithwaite Decl. ¶¶ 13-14.)  Plaintiffs never asked Kelly or VP Music whether Kelly was already subject to an exclusive recording agreement, even though VP Music had previously released an album by Kelly.  (Daniel Decl. Ex. K: Deposition of Lansford Dyer dated July 27, 2007 at 60.)  VP Music's president stated that he "had never heard of" Plaintiffs until Plaintiffs later asserted their claims.  (Daniel Decl. Ex. H: Deposition of Christopher Chin dated July 20, 2006 at 94; Chin Decl. ¶¶ 21-23).

Kelly wrote the lyrics for one of the songs, "Sinking Feeling," and HTA recorded Kelly's performance of the work around November 2001.  (Braithwaite Decl. ¶¶ 16-17.)  In February 2003, HTA created a CD of recordings by various artists that included Kelly's performance of "Sinking Feeling."  (Daniel Decl. Ex. K at 26-27; Daniel Decl. Ex. G at 18-21.)  HTA made approximately four thousand copies of the CD, distributing a few hundred of them for sale.  (Daniel Decl. Ex. K at 132.)  Dyer advised his associate to give Kelly copies of "Sinking Feeling" "to pitch to the various record companies for licensing discussions."  (Braithwaite Decl. ¶ 21.)

At Kelly's request, HTA also produced a music video (the "Video") that incorporated the sound recording of "Sinking Feeling."  (Braithwaite Decl. ¶¶ 20, 23-24; Daniel Decl. Ex. X: Music video produced by Dyer.)  The Video is four minutes long.  (Daniel Decl.

3

Ex. X.)  Kelly's personal manager requested a copy of the Video, and Dyer's associate gave it to her "to copy and to return the original version[.]"  (Braithwaite Decl. ¶ 26.)  A television commercial promoting VP Records ("VP's Commercial") appears to include three shots of Kelly from the Video, with each shot lasting for less than one second.  (Daniel Decl. Ex. Y: Video of advertisement for VP Music; Ex. G at 114.)  In one shot, Kelly is performing in a studio, and in the other two shots he is sitting on a doorstep, moving to a rhythm.  (Daniel Decl. Ex. Y.)  VP's Commercial is approximately one minute in length, and includes no other images of Kelly other than the ones which appear to be taken from the Video.  (Daniel Decl. Ex. Y.)

Kelly delivered various recordings, including "Sinking Feeling," to VP Music in January or February of 2003 for an album of Kelly's works entitled "Smile."  (Chin Decl. ¶ 25.)  On August 12, 2003, VP Music released "Smile" for public sale.  (Chin Decl. ¶ 25.)  On August 22, 2003, the Register of Copyrights issued a Certificate of Registration ("VP Music's Certificate") to VP Music for the performance and sound recordings on the "Smile" album.  (Daniel Decl. Ex. B: Certificate of Registration at 1.)

After learning of the release of the "Smile" CD, HTA sent a proposed contract to Kelly, but Kelly never signed it.  (Daniel Decl. Ex. K at 177-78.)  On February 17, 2004, the Register of Copyrights issued a Certificate of Registration ("HTA's Certificate") to HTA for the Video.  (Daniel Decl. Ex. C: Certificate of Registration at 1.)  HTA's Certificate categorizes the sound recording of "Sinking Feeling" as a pre-existing work, and registers rights in the music video incorporating the pre-existing sound recording.  (Daniel Decl. Ex. C at 2.)

DISCUSSION

I. Summary Judgment Standard

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  To defeat a summary judgment motion, the nonmoving party must do "more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Where it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" summary judgment should be granted.  Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994).

II. Copyright

A. Standing

To have standing, a plaintiff must bring a copyright claim arising from a registered copyright, 17 U.S.C. § 411(a), and the plaintiff must be the "legal or beneficial owner" of the copyright, 17 U.S.C. § 501(b); Newsome v. Brown, 209 Fed. App'x 11, 13 (2d Cir. 2006).

1. Registration

"[P]roper registration is a prerequisite to an action for infringement." Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 453 (2d Cir. 1989); 17 U.S.C. § 411(a). Because Plaintiffs have not registered the "Sinking Feeling" sound recording, they have no standing to claim its infringement, and Defendants' motion for summary judgment on the claim that the "Smile" CD infringed Plaintiffs' "Sinking Feeling" sound recording is granted.[1]

A proper registration for a derivative work must identify both the pre-existing work and the original material in the work. Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 155 F. Supp. 2d 1, 23 (S.D.N.Y. 2001). HTA's Certificate describes the pre-existing work as "words, music and sound recordings," and the original material as the "motion picture production." (Daniel Decl. Ex. C.) Accordingly, Plaintiffs have established proper registration of the Video.

2. Ownership

Legal ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "[A]n author is he to whom anything owes its origin; originator; maker." Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc., 290 F.3d 98, 107 (2d Cir. 2002). Because both HTA and Dyer created the Video, both are legal owners of the copyright. See 17 U.S.C. § 201(a). The VP Agreement does not shield VP Music from Plaintiffs' infringement claim, because Kelly did not own the rights to the Video and therefore could not have assigned them to Defendants. Accordingly, Plaintiffs have standing to bring their claim that Defendants infringed the Video.

B. Infringement of the Video

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). "[A] certificate of copyright registration generates a presumption that the copyright is valid[.]" Pem-Am., Inc. v. Sunham Home Fashions, LLC, 83 Fed. App'x 369, 371 (2d Cir. 2003) (citing 17 U.S.C. § 410(c)). HTA's Certificate is evidence that Plaintiffs' copyright of the Video as a derivative work is valid.

"To demonstrate unauthorized copying, the plaintiff must first show that his work was actually copied; second, he must establish substantial similarity . . . i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is "more than de minimis." Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) (internal quotation marks and citation omitted). Because the three shots of Kelly in VP's Commercial appear to be taken from the Video, and Defendants have not presented evidence suggesting otherwise, the Court finds that Plaintiffs' work was actually copied.

As to whether the copied parts of the Video were protected, original features of a derivative work are protected if the author does not infringe the pre-existing work to create them. Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 909 (2d Cir. 1980); 17 U.S.C. § 103(a).

---

[1] Plaintiffs claim the rights to the "song," but a song is not a recognized category under the Copyright Act. See 17 U.S.C. § 101. The Court understands Plaintiffs to be claiming rights to the sound recording, since Plaintiffs concede they do not own the rights to the words or the musical composition. (Daniel Decl. Ex. K, pp. 171-174.)

"Section 103(a) 'prevents an infringer from benefiting, through copyright protection, from committing an unlawful act, but preserves protection for those parts of the work that do not employ the preexisting work.'" Caffey v. Cook, 409 F. Supp. 2d 484, 496 (S.D.N.Y. 2006) (quoting H.R. Rep. No.1476, 94 Cong. 2d Sess. 159, reprinted in (1976) U.S. Code Cong. & Ad. News p. 5659, 5671). Plaintiffs would not have had to use the "Sinking Feeling" sound recording to produce the moving images in the Video, and Defendants have not presented any evidence to the contrary. Accordingly, this Court finds the three shots of Kelly taken from the Video are protected.

Copying is de minimus if a defendant copies protected material "to such a trivial extent as to fall below the quantitative threshold of substantial similarity[.]" Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 74 (2d Cir. 1997). To determine whether the quantity of unauthorized copying is de minimus, "courts often look to the amount of the copyrighted work that was copied, as well as (in cases involving visual works) the observability of the copyrighted work in the allegedly infringing work." Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998). Courts have held that although the alleged use of out-of-focus copyrighted photographs as background for approximately thirty seconds in a feature length movie amounts to de minimus copying, Sandoval, 147 F.3d at 217-18, a defendant's incorporation of several three-second clips from a feature-length movie for its promotional video exceeds the de minimus threshold, Twentieth Century Fox, 155 F. Supp. 2d at 46. While only three shots of Kelly from the Video appear in VP's Commercial, they take up most of the screen when they appear, and Kelly is clearly observable in them. Moreover, because the shots each last long enough to show Kelly in motion, they are much closer in substance to the short clips in Twentieth Century Fox

8

than the de minimus use of background photographs in Sandoval. The shots of Kelly run consecutively, and together take up almost three seconds of the one-minute video, or approximately five percent of its air time. Further, the three shots constitute all of the visual images in VP's Commercial that promote Kelly and the "Smile" CD; the remainder of VP's Commercial promotes other artists. Under these circumstances, this Court cannot find the amount copied to be de minimus.

Because Defendants have presented evidence supporting a finding of unauthorized copying of protected elements of the Video exceeding the de minimus level, summary judgment on Plaintiffs' infringement claim is denied with respect to the Video.


III.  State Law Claims

"The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) (citing 17 U.S.C. § 301(a)). While "the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim . . . [the Second Circuit takes] a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." Briarpatch, 373 F.3d at 305-06.

9

A. Unjust Enrichment

The element of enrichment by itself is not enough to render an unjust enrichment claim qualitatively different from a copyright claim. Briarpatch, 373 F.3d at 306. Plaintiffs claim that "Defendants have been unjustly enriched through commercial exploitation of the subject song and/or Video." (Amended Complaint dated Feb. 27, 2007 ("Am. Compl.") ¶ 94.) This claim is preempted, because it is simply an allegation of copyright infringement.

B. Unfair Competition

"[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301." Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992). Plaintiffs claim that "Defendants have misappropriated and continue to misappropriate for their own commercial advantage the subject song and video." (Am. Compl. ¶ 81.) Because there is no qualitative difference between this claim and a copyright infringement claim, the unfair competition claim is preempted.

C. Tortious Interference with Contract

"[C]laims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted." Am. Movie Classics Co. v. Turner Entm't Co., 922 F. Supp. 926, 932 (S.D.N.Y. 1996). Plaintiffs claim that "Defendants intentionally caused Junior Kelly to breach his contract with Plaintiffs when it caused Junior Kelly to deliver and relinquish the subject song and video to Defendants[.]" (Am. Compl. ¶ 76.) Because this claim alleges conduct other than infringement, it is not preempted.

"Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's

intentional procurement of the third-party's breach of the contract without justification, actual

breach of the contract, and damages resulting therefrom." Lama Holding Co. v. Smith Barney

Inc., 88 N.Y.2d 413, 424 (N.Y. 1996). VP Music's president states he had not heard of Plaintiffs

until they asserted their claims, and Plaintiffs do not present any evidence that Defendants had

learned of the HTA Contract prior to that time. There is also no evidence that the HTA Contract

prohibited Kelly from delivering the "Sinking Feeling" recording or Video to a third party; in

fact, Dyer's associate explicitly told Kelly he could shop the recording to record companies and

make extra copies of the Video. (Braithwaite Decl. ¶¶ 21, 26.) Because there is no evidence

Kelly breached the HTA Contract by delivering his song and the Video to VP Music, or that VP

Music had any knowledge of the HTA Contract, summary judgment is granted for Defendants

dismissing Plaintiffs' tortious interference claim.

    D. Conversion

        "Conversion . . . is a tort involving acts—possession and control of chattels—

which are qualitatively different from those proscribed by copyright law, and which therefore are

not subject to preemption." Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 201

(2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985). Plaintiffs claim that Defendants

wrongfully obtained copies of the "Sinking Feeling" recording and the Video from them. (Am.

Compl. ¶¶ 87-88.) To the extent that Plaintiffs assert that the Defendants took physical copies of

the Video and song without permission, such a claim is not preempted by the Copyright Act.

See Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc., No. 06 Civ. 2083 (RWS),

2006 WL 3500702, at *12 (S.D.N.Y. Dec. 4, 2006) (conversion claim preempted because it did

not involve the "conversion of physical documents").

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Texas, 87 N.Y.2d 36, 44 (N.Y. 1995). "A wrongful intent is not an essential element of the conversion." Leve v. C. Itoh & Co., (Am.), Inc., 136 A.D.2d 477, 478 (N.Y. App. Div. 1988). "A good faith, reasonable belief that one has a legal right to possession of goods is not a defense to a claim of conversion." O'Diah v. New York City, No. 02 Civ. 274 (DLC), 2002 WL 1941179, at *19 (S.D.N.Y. Aug. 21, 2002). Where the initial transfer of property to the defendant is unauthorized, conversion occurs at the time of transfer, regardless of whether the plaintiff demands that the defendant return the property. In re King, 305 A.D.2d 683, 683 (N.Y. App. Div. 2003).

Dyer, through his associate, gave copies of the "Sinking Feeling" recording to Kelly and told him to distribute it to record companies. (Braithwaite Decl. ¶ 21.) Because Dyer authorized VP Music's physical possession of the "Sinking Feeling" recording, VP Music's possession and control over a tangible copy of the "Sinking Feeling" recording—e.g., a CD—does not constitute conversion. However, there is no evidence that Dyer authorized the distribution of the Video; Dyer's associate gave a copy of it to Kelly's manager at her request, and instructed her to return the original to him. (Braithwaite Decl. ¶ 26.) Because Plaintiffs did not authorize the transfer of the Video to the Defendants, Defendants' possession and control over the copy of the Video could constitute conversion, regardless of whether Defendants knew their possession of the Video was unauthorized. Accordingly, while summary judgment on the conversion claim is granted with respect to the "Sinking Feeling" recording, it is denied with respect to the Video.

III.  Monopolization

   A.  Antitrust Standing

     "[A]ntitrust standing for a private plaintiff requires a showing of a special kind of 'antitrust injury' . . . attributable to the anticompetitive aspect of the practice under scrutiny." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121-22 (2d Cir. 2007) (citation omitted).  "Showing such an injury requires identifying the practice complained of and the reasons such a practice is or might be anticompetitive." Port Dock, 507 F.3d at 122.  "[A] plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."  Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 344 (1990) (emphasis supplied); see also Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 438 (2d Cir. 2005) ("The antitrust laws . . . were enacted for the protection of competition, not competitors.") (internal quotation marks and citation omitted).  A plaintiff also lacks standing if its injury does not arise from monopolization—i.e., if the defendant's power to raise prices or restrict output does not cause the plaintiff's injury.  Port Dock, 507 F.3d at 123.

     Plaintiffs claim that Defendants violate 15 U.S.C. § 2 when they selectively enforce their exclusive recording agreements with Caribbean and reggae artists through their monopolization of the market for Caribbean and reggae artists.  Plaintiffs allege this selective enforcement causes them to lose money that they have invested in the production of Caribbean music. Specifically, Plaintiffs allege that Defendants (1) sign Caribbean and reggae artists to exclusive recording agreements; (2) allow the artists to make recordings with third-party producers; and (3) if the recordings are successful, claim the rights to them without compensating the third-party producers.  (Am. Compl. ¶¶ 47-61.)  Because selective enforcement

by definition allows greater competition than complete enforcement, Defendants' selective enforcement of their exclusivity agreements with artists cannot reduce competition for Caribbean or reggae artists.  See Atl. Richfield, 495 U.S. at 344.  Yet even assuming Defendants had the power to restrict the supply of Caribbean artists, monopolization is not the means by which competitors selectively enforce exclusivity agreement.  Because any competitor, regardless of its market power, can choose when to enforce an exclusivity agreement, monopolization cannot have caused Plaintiffs' injury.  See Port Dock, 507 F.3d at 123.  Accordingly, Plaintiffs' antitrust claim is dismissed for failure to allege antitrust injury.

B. Defendants' Failure to Produce Requested Documents

Plaintiffs move for denial of summary judgment pursuant to Fed. R. Civ. P. 56(f) because Defendants refuse to produce documentation concerning their sales figures, market share, and other information supportive of Plaintiffs' antitrust claim.  Since Plaintiffs fail to allege an antitrust injury, this application is moot.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment dismissing Plaintiffs' copyright and conversion claims is granted with respect to the "Sinking Feeling" recording and denied with respect to the Video.  Defendants' summary judgment motion is also granted dismissing Plaintiffs' antitrust, unfair competition, unjust enrichment and tortious interference claims.

Dated:  July 24, 2008
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

Armani Scott, Esq.
The Scott Firm
802 Kent Avenue, 3rd Fl.
Brooklyn, NY 11201
*Counsel for Plaintiffs*

Al J. Daniel, Jr., Esq.
Cowen, DeBaets, Abrahams & Sheppard LLP
41 Madison Avenue, 34th Floor
New York, NY 10010
*Counsel for Defendants*

15